**WOODWARD IRON CO. v. UNITED STATES.**

**SAME v. WILLINGHAM.**

**SAME v. DAVIS.**

**Nos. 5370–5372.**

District Court, N. D. Alabama, S. D.

Feb. 6, 1945.

L. C. Bradley, of Birmingham, Ala., for plaintiff.

Jim C. Smith, U. S. Atty., and William H. Burton, Jr., Asst. U. S. Atty., both of Birmingham, Ala., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Homer R. Miller, Sp. Assts. to Atty. Gen., for defendants.

MULLINS, District Judge.

### Findings of Fact.

1. Cause No. 5370 is a suit under the Tucker Act, 28 U.S.C.A. § 41(20), by Woodward Iron Company against the United States for the recovery of $3,934.09, plus interest, income taxes paid by plaintiff for 1936, for which a certificate of overassessment has been issued by the Commissioner of Internal Revenue and credited against income and excess profits taxes allegedly due and owing by plaintiff for 1937.

Cause No. 5371 is a suit under the Tucker Act by Woodward Iron Company against Henry J. Willingham present Collector of Internal Revenue in and for the District of Alabama, for the recovery of $10,470.12, income taxes, and $1,641.45, excess profits taxes, each for 1937, and each plus interest.

Cause No. 5372 is a suit under the Tucker Act by Woodward Iron Company against Harwell G. Davis, former Collector of Internal Revenue for the recovery of $27,-752.80, income taxes, and $2,058.20, excess profits taxes, each for 1937, and each plus interest.

These three cases were consolidated and tried together by agreement of the parties and by order of this Court.

2. Plaintiff, Woodward Iron Company, is a corporation duly and legally organized under the laws of the State of Delaware. It is qualified to do and actually does business in the State of Alabama, its principal place of active business being in Jefferson County, Alabama.

3. Plaintiff filed United States income and excess profits tax returns for the calendar years 1936 and 1937, with Harwell G. Davis, former Collector of Internal Revenue who acted in such capacity from July 3, 1933, through August 31, 1939, and who is a resident of the City of Birmingham, Alabama, which is located within the Southern Division, Northern District of Alabama. Henry J. Willingham is the present Collector of Internal Revenue having qualified as such on September 1, 1939, and being still in office.

4. For all years of consequences to the determination of the issues here involved, plaintiff kept its books of account and filed its federal income and excess profits tax returns according to the accrual method of accounting and during said years filed said returns on the calendar year basis.

5. Plaintiff duly filed within the time required by law with Harwell G. Davis, former Collector of Internal Revenue, its federal income and excess profits tax return for 1936, which return disclosed a liability for income tax only of $95,446.32, which plaintiff paid said Harwell G. Davis as Collector, in installments, the last payment being made on December 14, 1937, in an amount exceeding $5,987.99.

6. Plaintiff duly filed within the time required by law with said Harwell G. Davis, former Collector, its federal income and excess profits tax return for 1937, which disclosed liabilities for income tax in the amount of $178,338.26, and excess profits tax of $2,058.20, total $180,396.46, which amount plaintiff paid to said Harwell G. Davis as Collector of Internal Revenue in four equal installments on March 15, 1938, June 15, 1938, September 14, 1938, and December 14, 1938, respectively, without differentiating between payments of income and excess profits taxes, respectively. The amount paid on December 14,

1938, exceeded $29,811. Plaintiff has waived any claim to interest on either income or excess profits taxes included in said payment for any period prior to December 14, 1938.

7. On January 22, 1940, plaintiff duly filed within the time prescribed by law with the proper Government officials separate claims for refund for the years 1936 and 1937, in which it sought refunds for 1936, in the amount of $5,587.99, and for 1937 in the amount of $29,811.

8. On June 6, 1944, the Commissioner of Internal Revenue addressed and mailed a letter to plaintiff who duly received the same which letter related to certain adjustments of plaintiff's income for 1936 and 1937. In said letter the Commissioner advised plaintiff that a determination had been made that plaintiff had overpaid its income taxes for 1936 in the amount of $3,934.09. The Commissioner determined that plaintiff's net income should be adjusted from $644,099.16 as disclosed by the return for 1936, to $617,814.84. Said adjustment resulted from the following alleged unallowable deductions and additional income:

Difference in surplus reserves.. $ 900.00
Capital stock tax for the year
  ended June 30, 1936......... 1,900.00
Excessive deduction for capital
  stock tax for the year ended
  June 30, 1937.............. 26.00
                                _____
    Total ................... $ 2,826.00

Alleged nontaxable income and additional deductions allowable:

Interest Federal farm mortgage
  bonds .................... $ 57.00
Insurance .................. 4,672.92
Interest accrued on past due coupons 6% collateral trust notes 24,380.40
                                _____
    Total ................... $29,110.32
Net adjustments in favor of
  plaintiff ................. $26,284.32

A computation at proper and legal rates on the basis used by the Commissioner as herein above set out resulted in an overassessment for the year 1936 in the amount of $3,934.09. In said letter the Commissioner advised plaintiff that he had determined there was a deficiency for 1937 of income taxes $9,179.03 and excess profits taxes $4,069.10, total $13,248.13.

Said alleged deficiency was due to the following alleged unallowable deductions and additional income for said year:

Interest paid on 6% collateral
  trust notes applicable to prior
  years ..................... $57,626.40
Expenses in connection with listing stocks ................. 6,250.00
Reserve, Workmens compensation insurance .............. 2.13
Excess deduction capital stock
  tax ....................... 4,977.00
                                _____
    Total ................... $68,855.53

Alleged nontaxable income and additional deductions:

Additional deduction for legal
  and accounting fees and fees
  to a specified bank.......... $ 3,592.89

The net adjustments increased plaintiff's taxable income for the year 1937 in the amount of $65,262.64. As a result the net income as disclosed in the return in the amount of $1,198,713.28 was raised to $1,263,975.92. A computation on said basis, using legal and proper rates, resulted in the deficiencies of income and excess profits taxes for 1937 in the amounts determined by the Commissioner.

9. Thereafter on June 30, 1940, said Henry J. Willingham, as Collector of Internal Revenue, by direction of the Commissioner of Internal Revenue, credited said overassessment of $3,934.09 for the year 1936, against deficiencies of $13,248.13, determined by the Commissioner as aforesaid and payments of which were made as hereinafter set forth.

After August 1, 1940, the Commissioner refunded to plaintiff $612.37 of interest on said sum of $3,934.09. On September 12, 1940, the Commissioner mailed to the plaintiff a statutory notice of disallowance of the balance of the refund for the year 1936 as claimed by the plaintiff as aforesaid.

Thereafter the Commissioner of Internal Revenue assessed the deficiencies of income and excess profits taxes for 1937 as covered by the letter of June 6, 1940, as aforesaid. On July 31, 1940, plaintiff paid Henry J. Willingham, as Collector of Internal Revenue, the total sum of $11,177.48, which was the principal amount of the aforesaid additional income and excess profits taxes for 1937, and interest thereon

computed to July 19, 1940, less the overpayment of income taxes for 1936, credited against said deficiencies as aforesaid the net payment being as follows:

| | |
|---|---|
| Income tax, 1937 .............. | $ 9,179.03 |
| Interest thereon .............. | 1,291.09 |
| | |
| Excess profits tax, 1937........ | 4,069.10 |
| Interest thereon .............. | 572.35 |
| | |
| Total ................... | $15,111.57 |
| Less overassessment, income tax, 1936 ................... | 3,934.09 |
| | |
| Balance due .............. | $11,177.48 |

On August 8, 1940, the Commissioner mailed to plaintiff a statutory notice of disallowance of the aforesaid claim for refund of $29,811, for the year 1937, which claim for refund had been filed as aforesaid on January 22, 1940.

On January 31, 1942, plaintiff duly filed with the proper Government officials within the time fixed by law a claim for refund for 1937 in the amount of $42,864.33. On July 10, 1942, the Commissioner mailed to plaintiff a statutory notice of disallowance of that portion of the claim for refund filed on January 31, 1942, which had not previously been disallowed under date of August 8, 1940.

10. The pleadings in the above-entitled cases properly present for this Court's determination the following questions:

A. Whether plaintiff is entitled to a deduction in 1937 of interest in the amount of $57,974.22, which it paid to holders of interest coupon notes on February 16, 1937, or whether the Commissioner properly allowed ·as a deduction for 1937 only the amount that accrued between February 1, 1937 (the date the notes became defaulted) and February 16, 1937 (the date the interest on coupons was paid).

B. Whether plaintiff is required to deduct capital stock taxes for the years ended June 30, 1936, and June 30, 1937, in the years 1936 and 1937, respectively, or whether plaintiff is entitled to pro rate these taxes over each capital stock tax year.

C. Whether plaintiff is entitled in the year 1937 to a deduction on account of certain losses or bad debts with respect to advances made by plaintiff in previous years to its wholly owned subsidiaries, Pewaibic Mining Company and Industrial Land Company, which subsidiaries were dissolved and liquidated in 1937 and their assets transferred to plaintiff pursuant to such liquidation and dissolution.

The claims for refund filed by plaintiff are sufficient in form and substance to present these questions and to give this Court jurisdiction to determine said issues. Said claims for refund were filed within the time prescribed by law and these actions were each timely instituted within the period fixed by law.

*The Claimed Interest Deduction*

11. Prior to the year 1936, plaintiff issued and negotiated its first mortgage lien collateral trust 6% gold notes and secured the same by a collateral trust indenture to the Chase National Bank of the City of New York as trustee and deposited with said bank subject to said indenture certain of its first mortgage bonds.

Said 6% notes called for interest at the rate of 6% payable semi-annually on February 1st and August 1st of each year until payment of the principal thereof. Along with said notes there was executed and negotiated interest coupons which were attached to said notes. Under the terms of the indenture and notes interest accrued on these coupon notes upon and after defaults in payment of interest on said 6% notes. Said indenture notes and coupon notes were all executed and delivered in the State of New York. Plaintiff defaulted in the payment of interest due on its 6% notes on February 1, 1933, and on all subsequent installment of interest to and including the installment thereof due on February 1, 1937, on which date the 6% notes matured.

Notwithstanding the provisions of the 6% notes and of the indenture securing the same plaintiff did not accrue as a liability on its books nor deduct on any tax return filed by it for the years 1933 to 1936, inclusive, any amount with respect to interest on past due interest coupons attached to said 6% notes. Plaintiff had losses for each of the years 1933, 1934 and 1935, which exceeded in amount the amounts of interest on the interest coupon notes which interest the Commissioner of Internal Revenue determined constituted a proper deduction from gross income for each of the said years.

12. On October 16, 1936, plaintiff filed in this Court a petition for reorganization

pursuant to the provisions of Section 77B, Bankruptcy Act, as amended, 11 U.S.C.A. § 207. On said date this Court entered an order approving the petition and assuming exclusive jurisdiction over debtor and all of its assets, property and business wherever situated, as provided in said Section 77B.

13. In 1936, Chase National Bank, trustee under the indentures, filed a petition in this Court alleging defaults in the 6% notes since February 1, 1933, and that interest was therefore due under the coupon notes and praying for leave to intervene in order to protect the trustee and holders of the notes and coupons and that a decree be entered giving effect to the rights of trustee and note holders.

Thereafter on January 22, 1937, a committee for the holders of first mortgage bonds of plaintiff and its counsel filed with the Judge of this Court a memorandum of facts concerning the question of interest on interest on the 6% notes, together with memoranda of law prepared by opposing counsel which set forth their respective positions on the question of whether the coupon note holders were entitled to collect interest on interest on the 6% notes in the reorganization proceedings.

The rights of the coupon note holders to collect said interest were opposed on the ground that the collection of such interest was forbidden under the laws of the State of New York, and that the laws of the State of New York governed in determining such question. On the other hand the coupon note holders contended they were entitled to collect said interest under federal decisions governing the provisions of the New York Statutes.

On January 25, 1937, the Honorable David J. Davis, then Judge of this Court, addressed a letter to counsel for the first mortgage bondholders expressing the view that under federal decisions which he was bound to follow the coupon note holders were entitled to recover the claimed interest.

On January 29, 1937, this Court approved a plan of reorganization dated as of December 1, 1936. The decree of the Court approving the plan provided for the allowance and payment of the interest on the past due coupon notes. On April 29, 1937, the plan was confirmed. An order of this Court dated May 3, 1937, provided that debtor had fully complied with the order of April 29, 1937, and that accordingly the confirmation of the plan was duly effected. No appeal was taken from either the order of April 29, 1937, or May 3, 1937.

On February 16, 1937, or shortly thereafter and prior to the effective date of the plan of reorganization, plaintiff paid to the respective holders of its 6% notes the aggregate sum of $57,974.22, as interest on past due coupons attached to said notes which said sum was paid in addition to the amounts due and owing as interest at the rate of 6% per annum on the principal of said notes, all of which payments were in accordance with the letter of the Honorable David J. Davis, Judge of this Court, and the decree confirming the plan as aforesaid.

14. Plaintiff recorded on its books for the year 1937 "additional accruals" of $63,525.24, of which sum $57,974.22 was accrued as interest applicable to past due coupons through February 16, 1937, and debited capital surplus and credited interest on funded debt for said amount. In its return for 1937, plaintiff claimed a deduction of $57,974.22 as accrued interest for said year. The Commissioner of Internal Revenue disallowed $57,626.40 of the amount so claimed the amounts disallowed representing the amounts of interest paid on defaulted interest coupons which accrued during periods of default prior to the beginning of the year 1937 and allowed only $347.82, which represented interest which accrued after the beginning of the year 1937.

The Commissioner of Internal Revenue allowed $24,380.40 of said interest as a deduction for 1936 which said sum had not previously been claimed by plaintiff for said year. The tax effect of the Commissioner's action was to increase plaintiff's tax liability for 1937 in the amount of $11,582.90, and decrease plaintiff's tax liability for the year 1936 in the amount of $3,657.06. Said sum of $3,657.06 was included in amounts credited against assessed deficiencies for 1937 and the sum of $612.37 interest for 1936 was refunded to plaintiff as aforesaid.

### Claimed Capital Stock Tax Deductions

15. Plaintiff filed capital stock tax returns for the years ended June 30, 1935, June 30, 1936, and June 30, 1937, and June 30, 1938, within the time required by law

and in said return declared the value of its capital stock as follows:

Return for year ended June 30, 1935, Value as of December 31, 1934.......... $ 1,844,031.51

In return for June 30, 1936, Value as of December 31, 1935 .................. $11,000,000.00

Return for year ended June 30, 1937, Value as of December 31, 1936 ......... $11,644,019.00

Return for year ended June 30, 1938, Value as of December 31, 1937 ........ $10,000,000.00

Plaintiff paid with said returns the following capital stock taxes:

For the year ended June 30, 1935..... $ 1,844.00

For the year ended June 30, 1936..... $11,000.00

For the year ended June 30, 1937..... $11,644.00 (of said amount the sum of $26 was refunded to plaintiff thereby leaving a net payment of $11,618.00)

For the year ended June 30, 1938..... $10,000.00

16. In its income and excess profits tax returns for the years indicated below plaintiff claimed as deductions for capital stock taxes the following amounts:

1935 .................. $ 5,344.00
1936 .................. 13,544.00
1937 .................. 14,977.00
1938 .................. 5,567.00

17. The Commissioner of Internal Revenue has allowed the following amounts as deductions for capital stock taxes for the years indicated below:

1935 .................. $ 5,344.00
1936 .................. $11,618.00
1937 .................. $10,000.00
1938 .................. $10,735.00

The year 1935 was a deficit year, the plaintiff's return showing a loss for said year. The Commissioner therefore did not disturb the amounts claimed as deductions by plaintiff for said year. On its books plaintiff treated the capital stock taxes in the manner and method disclosed by Exhibit K attached to the stipulation of facts filed in these cases. Exhibit K shows that said taxes were pro rated and accrued in this manner on plaintiff's books—that is, plaintiff accrued one-half of the tax for the capital stock tax year ended June 30, 1936, in the year 1935, and one-half of said tax in the year 1936, and for the capital stock tax year ended June 30, 1937, it accrued one-half of the tax in the year 1936, and one-half of the tax in the year 1937. It followed the same practice for the capital stock tax year ended June 30, 1938.

18. The capital stock tax returns were filed and the Commissioner of Internal Revenue made his allowances and disallowances of the claimed deductions under the provisions of the following:

For 1936 and 1937, Section 105, Revenue Act of 1935, as amended by Section 401, Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 798.

For 1938, Section 601, Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1139.

*Claimed Losses or Bad Debt Deductions on Account of Advances to Pewaibic Mining Company and Industrial Land Company*

19. The Pewaibic Mining Company (hereinafter called Pewaibic) was an Alabama corporation organized in 1927, with a paid-in capital stock of $5,000, all of which was at all times mentioned herein owned by plaintiff. Between the dates of its organization and dissolution plaintiff had dealings with Pewaibic and made advancements to Pewaibic. These advances were for the following general purposes as indicated in the following table which sets forth generally headings and amounts advanced after each general heading:

Land account ............... $243,141.60
Taxes ...................... 4,164.91
Prospecting ................. 23,828.65
Options .................... 872.00
Miscellaneous expenses ...... 375.75

Total ................... $272,382.91

Practically all of the sums attributable to the land account consisted of monies advanced by plaintiff to Pewaibic for the purchase of real estate and payments on installments of land purchased under contracts made by Pewaibic. The items in the land account included the sum of $9,000 as interest items and an item of $12.00 for filing certificate of incorporation of Pewaibic. The detailed statements of the account

discloses advances for testing properties purchased and recording fees in the amounts of $11,197.54 and $7.40, respectively. The accounts as disclosed by said exhibits show the following credits against said advances:

Revenue from rentals.......... $2,765.91
Depletion ...................... 661.50
Timber sales ................. 3,900.00

20. Pursuant to an agreement of dissolution Pewaibic transferred by deed to plaintiff as of June 30, 1937, all of its assets and property situated in Franklin County, Alabama, having a book value as shown by Pewaibic's books as follows:

Cost ...................... $245,346.54
Less, reserve for depletion.... 661.50
                              _____
Net book value.......... $244,685.04

Thereafter on June 30, 1937, Pewaibic dissolved pursuant to the laws of Alabama. On June 30, 1937, the net fair market value of all of the property and assets of Pewaibic (after payment of its liabilities to others and plaintiff) was $79,688.29.

21. For the year 1929, plaintiff claimed and was allowed a loss of about $500,000, on account of the abandonment of mining equipment and property which plaintiff owned and which was located on Pewaibic's land. In 1929, plaintiff decided to and did abandon mining operations on said land and no operations were carried on said land after said year. No interest in the real estate owned by Pewaibic was sold between the date of abandonment and June 30, 1937. The amounts which plaintiff paid out for prospecting and testing on the land of Pewaibic were in connection with operations carried on by plaintiff. There is no evidence sufficient to show any legal obligation or liability on the part of Pewaibic to repay any of these sums advanced to plaintiff or that any of the prospecting or testing was carried on by Pewaibic. The prospecting and testing were operations of plaintiff and the amounts paid out by plaintiff were for plaintiff's direct benefit.

22. Industrial Land Company (hereinafter called Industrial), was an Alabama corporation organized in 1924 with paid-in capital stock of $3,000, all of which was at all times material herein, owned by plaintiff. Plaintiff had financial dealings and made advances to Industrial between the dates of Industrial's organization and dissolution (which dealings appear in detail in Exhibits V, W and X attached to the stipulation of facts). A summary of said expenditures and advances under headings appropriate to each class and as shown by said exhibits discloses the amounts of the advances after each general heading as follows:

Real estate ................. $145,962.46
Commissions and options ..... 8,350.15
Interest .................... 5,131.39
Recording fees, etc.......... 244.95
Taxes ...................... 12,213.28
Land and building expenses... 1,020.87
                              _____
Total .................. $172,923.10

Less, credit for rentals....... 4,143.58
Total net expenditures including an advance of $3,000 for paid-in capital ............ $168,779.52

The land purchased by Industrial and for which plaintiff made advances as set forth under the heading "real estate" consisted of land near plaintiff's factory site with a view of possible plant expansion by plaintiff.

23. Shortly prior to June 30, 1937, plaintiff's directors adopted a resolution concerning the dissolution of Industrial, and on June 30, 1937, plaintiff and Industrial entered into a dissolution agreement similar to the agreement executed between plaintiff and Pewaibic. Pursuant to said dissolution Industrial transferred by deed to plaintiff all of its assets and properties as of June 30, 1937, consisting of land located in Jefferson County, Alabama, having a book value as shown by Industrial's books of $155,169.70. On June 30, 1937, Industrial dissolved pursuant to the laws of Alabama. On said date the net fair market value of all the property and assets of Industrial (after payments of its liabilities to others and plaintiff) was $129,381.07.

24. The fair market value of the properties of Pewaibic and Industrial was no higher on any dates from January 1, 1932, up to June 30, 1937, than the fair market value of said properties as of June 30, 1937, as herein found. There is no evidence from which this Court can determine the fair market value of the properties of Pewaibic and Industrial on dates prior to January 1, 1932.

25. The properties acquired by plaintiff under the liquidation of Pewaibic and Industrial were properties acquired for use in plaintiff's own business.

26. There is no evidence that plaintiff at any time was legally obligated to pay any of the amounts advanced by plaintiff for the purchase of lands or options by Pewaibic or Industrial.

27. There is no evidence sufficient to show any promise or legal obligation on the part of Pewaibic or Industrial to repay plaintiff for any sums advanced by plaintiff to said companies for any purposes and there was no agreement express or implied either by Pewaibic or Industrial to repay these sums currently or on any fixed or specific dates.

28. The advances made by plaintiff for the purchase of land and options, taxes, prospecting and testing, miscellaneous expense and other advances were paid out by plaintiff as contributions to plaintiff's capital investment in Pewaibic and Industrial. Plaintiff had no reasonable expectation of receiving repayments of any of the amounts advanced except upon the liquidation of Pewaibic and Industrial except in the case of Pewaibic there was some chance that minerals in substantial paying quantities might be discovered and their mining made profitable. However plaintiff had no reasonable expectation or hope that it could receive payment from that source after the end of the year 1929.

29. No notes or other evidence of indebtedness were ever executed either by Pewaibic or Industrial for payment to plaintiff of any of the amounts advanced. There was no agreement either express or implied for payment of interest by Pewaibic or Industrial to plaintiff. Plaintiff made no demand for payment against either Pewaibic or Industrial for the sums advanced or any part thereof. During the years 1924 to 1937, inclusive, plaintiff was not engaged in the business of loaning money. Plaintiff took no security from Industrial or Pewaibic for any of the amounts advanced except the business itself. Neither Pewaibic or Industrial had any income during the years 1924 to 1937, inclusive, out of which said companies could pay back to plaintiff upon demand any part of the amounts advanced and this probability was well known to plaintiff at the time it made the advances. Plaintiff's only reasonable expectation of collecting any substantial part of the advances made to Industrial was upon the dissolution of said company and after the year 1929, plaintiff knew there was no reasonable prospect of collecting any of the advances already made or any further advances made to Pewaibic. Part of the advances to Pewaibic were made after the year 1929.

30. Pewaibic and Industrial were incorporated by plaintiff for the reason that all of plaintiff's properties were covered by a blanket mortgage and in order that properties acquired by these companies could be held in the name of these companies without being subjected to the blanket mortgage. The dissolution of Pewaibic and Industrial was effected by plaintiff because under the reorganization proceeding the old blanket mortgage had been supplanted by a new mortgage and therefore the reasons which impelled the incorporation of these companies no longer required that their corporate existence be continued.

31. In its income and excess profits tax return for 1937 plaintiff did not claim or take a deduction either for a loss or bad debt deduction by reason of any sums advanced by Pewaibic and Industrial. In said return it claimed a number of other bad debt deductions which are not here in controversy. Although it did not claim any deduction on account of said advances the following statement appeared in a statement attached to and made a part of said return:

"(2) A list of the properties received upon the distribution of Industrial Land Company showing the bases thereof to said Industrial Land Company at the date of distribution is hereto attached marked Exhibit 'D,' and a list of such properties of Pewaibic Mining Company and the bases thereof to it is hereto attached marked Exhibit 'E.' The fair market value of said assets are not believed to have exceeded the respective bases thereof.

"(3) All of the stock of the two liquidating corporations was, as stated, beneficially owned by the Taxpayer. The cost thereof to the Taxpayer was $3,000.00 for the stock of Industrial Land Company and $5,000.00 for the stock of Pewaibic Mining Company, independently of the amounts of advances by the Taxpayer to said companies. Upon the liquidation of the said two corporations, taking the values of the assets received therefrom at the values shown on their books, the Taxpayer suffered losses of $14,276.73 and $26,412.57 respectively, parts of which were referable to the stock investment and the balance of which were referable to advances. No

deduction in respect to either of said losses has been taken on the attached return."

32. Journal entries regarding dissolution of Pewaibic and Industrial as they appeared on plaintiff's books as of June 30, 1937, and July 31, 1937 (Exhibit S, Stipulation), are as follows:

33. All advances by plaintiff to Pewaibic and Industrial were contributions to capital and not loans since they were made for the protection of plaintiff's capital investment in said corporations and not with the expectation of being repaid currently or on any specific dates but plaintiff's only

Woodward Iron Company
Woodward, Alabama

Journal Entries—Dissolution of Subsidiary Corporations as of June 30, 1937
July 1, 1937

| | Detail Ledger | | General Ledger | |
|---|---|---|---|---|
| | Dr. | Cr. | Dr. | Cr. |
| Accounts Receivable—Inter-Company | | . | (1) | $430,835.02 |
| Industrial Land Company | $165,779.52 | | | |
| Pewaibic Mining Company | 265,055.50 | | | |
| Stocks—Inter Company | | | | 8,000.00 |
| Industrial Land Company | 3,000.00 | | | |
| Pewaibic Mining Company | 5,000.00 | | | |
| Land & Mineral Reserves | | | $400,193.26 | |
| Prepaid Taxes | | | 17.94 | |
| Land Leases | | | 870.00 | |
| Taxes Accrued—Federal & State | | | | 508.61 |
| Federal Income Tax | | 390.92 | | |
| Federal Capital Stock Tax | . | 3.00 | | |
| State of Alabama Income Tax | | 114.69 | | |
| Taxes Accrued—Other Taxes | | | | 1,337.92 |
| Ad Valorem Taxes, etc. | | 1,337.92 | | |
| Reserve—Depletion | | | | 661.50 |
| Pewaibic Property | (1) | 661.50 | | |
| Surplus—Capital | | | 40,261.85 | |

. To take into account assets and liabilities of subsidiary corporations dissolved as of June 30, 1937 and to cancel inter-company accounts receivable and inter-company stock account

(1) In a protest against tax of Pewaibic Mining Company for 1937, claim is made that depletion in the sum of $3900, should be allowed. This, if allowed, would reduce the book value of this property, even though required to be set up at such book value.

expectation was to receive payment upon dissolution of said companies and liquidation of their assets.

34. Plaintiff did not charge off these advances on its books during the year 1937 so as to eliminate the same as assets.

## Conclusions of Law.

■ 1. The Commissioner of Internal Revenue correctly disallowed the sum of $57,626.40, as a deduction for accrued interest for 1937. The Commissioner correctly allowed all interest that was deductible in the year 1937.

2. The Commissioner of Internal Revenue correctly allowed the sum of $24,-380.40, as an interest deduction for 1936.

■ 3. Plaintiff is entitled to the following deductions for capital stock taxes for 1936 and 1937:

1936 .. $ 4,550.00 (being one-half of the estimated liability for such year)

1,900.00 (being the amount of increase occasioned by raising the value in the declaration filed in July, 1936)

5,824.50 (being one-half of the tax for the year ended June 30, 1937)

Total $12,274.50

1937 .. $ 5,819.50 (being one-half of the amount paid for the year ended June 30, 1937)

7,502.00 (being one-half of the capital stock tax for the year ended June 30, 1938, as the amount was calculated by taxpayer on December 31, 1937)

Total $13,321.50

Plaintiff on its books consistently accrued the capital stock taxes for the years here involved on the basis as shown in Conclusion No. 3, supra, and its methods of accounting were on the basis of prorating the capital stock liability over the entire capital stock tax year. It therefore follows that the plaintiff is entitled to additional deductions for 1936 and 1937 over and above those already allowed by the Commissioner of Internal Revenue in the following amounts:

1936 ................. $ 656.50
1937 ................. 3,321.50

Atlantic Coast Line Railroad Company v. Commissioner, 4 T. C. No. 16

■ 4. The sums advanced by plaintiff on account of Pewaibic and Industrial were capital investments and advancements and represented contributions to plaintiff's capital investment and not loans to said company.

5. Plaintiff is prohibited from deducting any loss on account of said advancements because of the provisions of Section 112 (b) (6), Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 856, which is here applicable and which provides for the non-recognition of gain or loss in the year 1937 by a corporation where property is distributed to said corporation in complete liquidation of another corporation.

6. The relationship of debtor and creditor did not exist between plaintiff and Pewaibic and Industrial as a result of said advances so as to entitle plaintiff to treat the advances as bad debts and to deduct the same under Section 23(k) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 828.

7. The properties of Pewaibic and Industrial were transferred upon dissolution of said companies to plaintiff as the sole stockholder of the said company and not to plaintiff as a creditor of said company in discharge of any indebtedness.

8. Plaintiff did not make a complete or partial charge-off of the advances made to Pewaibic and Industrial as bad debts ascertained to be worthless in 1937 upon plaintiff's books during the said year.

■ 9. The transfer of the advances on plaintiff's books to other accounts on plaintiff's books was not a proper charge-off within the purview of Section 23(k), Revenue Act of 1936, so as to entitle plaintiff to a deduction for any part of said advances as bad debts.

10. Plaintiff is entitled to no deduction in 1937 on account of the worthlessness of bad debts by reason of advances to Pewaibic and Industrial.

11. Plaintiff has overpaid its income taxes for 1936 in the amount of $98.48

(exclusive of overassessment credited against 1937 taxes).

12. Plaintiff has overpaid its income and excess profits taxes for 1937 in the amount of $727.72 including interest to date of payment.

13. This Court has jurisdiction of these actions and of the parties. Plaintiff has duly and properly filed claims for refund within the period prescribed by law and the actions have been timely instituted.

14. Judgment should be entered as follows:

Cause No. 5370 in favor of plaintiff and against defendant for $98.48 plus interest from December 14, 1937.

Cause No. 5371 in favor of plaintiff and against defendant for $727.72 plus interest from July 31, 1940.

Cause No. 5372 in favor of defendant and against plaintiff.